Walter J. Rudolph, Respondent (Plaintiff), v. O. D. Jennings and Company, an Illinois Corporation, Petitioner (Defendant).

Gen. No. 48,655.

First District, First Division.

November 5, 1962.

Quinn, Jacobs, Barry & Latchford, of Chicago (Robert V. Hogan and Charles D. Snewind, of counsel), for petitioner (defendant).

John T. Garrity, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This is an action brought by plaintiff, to recover percentages of profits and sales from defendant, pursuant to an alleged agreement. The case was submitted to the court on the pleadings, interrogatories, exhibits, evidence offered by plaintiff, and briefs. Defendant appeals from a judgment entered against it for the sum of $14,253.35.

It is undisputed that plaintiff, a mechanical engineer and business administrator, conferred in the early part of October, 1950, with O. D. Jennings, the president and chairman of defendant corporation, which

was engaged in the manufacture and sale of coin operated amusement and vending machines in Illinois. Pursuant to this conference plaintiff sent a letter in longhand to the company stating "what my requirements would be to come back and work for them, such as length of time, money, details of the contract, like percentages and so forth."

On October 17, 1950, the following letter was received by plaintiff from defendant company and signed by O. D. Jennings, as president:

"October 17, 1950

Walter J. Rudolph
1506 West Grand Ave.
Beloit, Wisconsin

Dear Sir:
Your rough draft of our proposed agreement has been received for study to prepare a letter of intent or an employment contract.

I prefer that the employment contract covers only the salary and duration of it plus the type of work, the means and cost of cancellation of the contract and the seniority protection you desire.

The other items covering bonuses or percentages you requested are covered in this letter of intent for the duration of your employment because they are variable or difficult to compensate for and thus may prove embarrassing, if covered in a firm contract. These items are:

1. We can pay you the requested 1% of all billing, less returns, only on contract and war work regardless who may be responsible for getting the work. This cannot include any work done on or for our pre-war coin machine products.

2. We can pay you 1% of the gross profits of the company, before taxes, as determined by our

94

regular methods of accounting, provided there are profits.

Please submit a new draft of the contract to me so I can check it and sign it if it is in proper order. Rest assured that the two percentages mentioned should produce not just hundreds but thousands of dollars of extra income to you. We here hope that coming back to us will prove profitable to you and us."

A short time thereafter the parties met in Chicago, and pursuant to their conference, plaintiff received the following letter from the defendant company, dated October 31, 1950, and signed by O. D. Jennings, as president:

"October 31, 1950

Walter J. Rudolph
1506 West Grand Ave.
Beloit, Wisconsin

Dear Sir:
This letter will serve as an employment agreement between this Company and you, as covered by the following items.

1. You will enter our employ November 15, 1950 or sooner, for a period of two (2) years from this date and will be assigned engineering, technical and/or administrative duties.
2. Your salary is to be $10,000.00 per year for this 2 year period payable for weekly or monthly terms, as may be our standard practise.
3. If this Company desires to terminate this agreement, for any or no reason, it may do so by payment to you of $2,000.00, less any

95

bonus or gratuity that may have been paid to you.

4. Your services for a previous term of employment, October 1942 to December 1946, will be added to this particular term in determining seniority or service benefits, pro-provided that this does not conflict with existing labor laws.

5. Any deviations from the above or the payment of a gratuity, bonus, etc., if acceptable to both you and the Company, shall not alter the intents and purposes herein set forth.

We hope our associations may be mutually beneficial."

On November 6, 1950, the plaintiff was employed by defendant pursuant to their agreement, and following the unexpected death of O. D. Jennings, plaintiff resigned as an employee January 8, 1954. During this entire period, plaintiff received a yearly salary of $10,000, together with bonuses of $100 in December of 1950 and $500 in 1951.

■ The plaintiff's theory, in support of the trial court judgment, is that the two aforementioned letters were properly construed together, as one writing, in determining the real intention of the parties as to what constituted plaintiff's employment contract. Defendant contends the letter of October 31, 1950, which has no reference to a percentage of profits and billings, constituted the entire agreement between the parties. Therefore, it is urged, the trial court erred when it considered the letter of October 17, 1950 as part of the agreement.

■ A contract may be made up of several different writings which, when connected, show the parties, terms and consideration. Esmay v. Gorton, 18 Ill 483.

96

Defendant's letter of October 17, specifically requested of plaintiff that the employment contract cover only the salary and duration of employment, and went on to assure plaintiff, "the other items covering bonuses or percentages you requested *are covered in this letter of intent for the duration of your employment* . . . ." This was done by defendant for reasons of its own, indicated by the explanatory words, "they are variable or difficult to compensate for and thus may prove embarrassing if covered in a firm contract." After stating that these items would not be covered in the employment contract, the October 17 letter continued by stating the exact percentage of billings and gross profits defendant would pay plaintiff, and assured him "that the two percentages mentioned should produce not just hundreds but thousands of dollars of extra income to you."

██ The parol evidence rule prohibits introduction of other memoranda only if, from the facts, it is determined that the one document is a complete and exclusive statement of the agreement of the parties. Continental Illinois Nat. Bank & Trust Co. of Chicago v. Nat. Casket Co., 27 Ill App2d 447, 169 NE2d 853; McCormick on Evidence, Chap 24, Sec 212. The letter of October 17 indicates that the letter of October 31 does not contain all the items of the contract between the parties. Unique Watch Crystal Co., Inc. v. Kotler, 344 Ill App 54, 99 NE2d 728 involved a similar set of facts. There, plaintiff sued for the balance of the purchase price of watch crystal manufacturing equipment and defendant counterclaimed for damages for breach of contract. Plaintiff introduced into evidence a document signed by both parties which it alleged to be the entire contract for sale. This document included the items to be purchased, as well as the amount and manner of payment. Defendant attempted to introduce into evidence three letters he contended should have

97

been construed together with the original document. The trial court sustained plaintiff's objection to these letters, two of which were written prior to the alleged contract for sale. On appeal, the exclusion of the explanatory letters was held to be error, the court stating:

> "The fact that some writing has been made by the parties for the better recollection of the terms of their transaction does not make it the sole memorial of the transaction. Was the writing meant to supersede all other material? Did the parties intend by that writing to embody their entire intent? (Wigmore, 3rd Ed, Sec 2400, Par 5) Other standards to be considered are apparent completeness and detail of the written agreement, *and aid of counsel in its preparation.*" 344 Ill App at p 59.

In the instant case, the letter of October 31 does not indicate it was intended to supersede all other material or to embody the entire content of the contract. Its silence on the matter of plaintiff's receiving a percentage of the profits does not indicate that such a form of compensation was rejected, but rather, is consonant with the expression in the letter of October 17 that the employment contract would not mention the percentage of billings and profits agreed upon. Nor is there any evidence in the record that either Mr. Jennings or Mr. Rudolph had aid of counsel when negotiating the employment contract. Thus, the two letters were properly construed together in determining the real intention of the parties.

In addition to the letter of October 17, there is other evidence in the record supporting plaintiff's contention that his employment contract included an agreement that he was to receive a percentage of the profits. Mr. Michael Gasick, a former employee of defendant and a director of the concern at the time Mr. Rudolph

98

was hired, testified Mr. Jennings told him Mr. Rudolph was to share in some of the profits.

■ On this appeal defendant contends for the first time, that the trial court erred in allowing damages for work performed after the expiration of two years from October 31, 1950. "Under familiar principles, questions not raised nor adjudicated at the trial; cannot be raised upon appeal." People v. Chicago Title & Trust Co., 409 Ill 505, 100 NE2d 578. Inasmuch as defendant argued that the alleged error is apparent from the record, we examined the proceedings and conclude the trial court properly computed the percentage of profits and billings due plaintiff. While it is true that the letter of October 31 states that plaintiff was to be employed for two years, the letter of October 17 agreed to pay the items in question for the duration of plaintiff's employment, which was extended by agreement beyond the two-year period.

The judgment is therefore affirmed.

Affirmed.

MURPHY and ENGLISH, JJ., concur.