THOMAS F. BLECK *et al.*, Plaintiffs-Appellants, *v.* THOMAS P. STEPANICH *et al.*, Defendants-Appellees.

Second District   No. 77-36

Opinion filed September 27, 1978.

Michael J. Cummins and Conzelman, Schultz & Sanrski, both of Waukegan, for appellants.

Paul J. Collins, of Waukegan, for appellees.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Plaintiffs, Thomas F. Bleck and Daniel K. Bleck, licensed Illinois architects, brought suit against Thomas Stepanich, individually and as trustee, Dr. Edward Sarsha, and Dr. Ramon Georges, pursuant to a written contract for architectural services. Defendants filed an answer and a counterclaim which alleged losses due to plaintiffs' failure to complete the building on time. Following a bench trial, the trial court found in favor of the defendants and against plaintiffs on the original suit, and for the counterdefendants on the counterclaim. Plaintiffs appeal the judgment in favor of defendants.

Defendants were partners in a project for the construction of a combination professional-office and apartment building on land they owned. On about April 1, 1968, plaintiffs, who were to act as architects for the proposed project, forwarded a proposed contract to defendant Stepanich. Under the terms of the proposed contract plaintiffs were to be paid 6% of the bid accepted for the project, apportioned so that 4% would accrue as their fee when plaintiffs completed the plans and specifications and the remaining 2% would accrue for plaintiffs' work in supervising the construction of the building.

The proposed contract was reviewed by defendant Stepanich, an

attorney, who made some revisions. The proposed contract had defined the cost of work as follows:

"5. Definition of the Cost of the Work—The cost of the work, as herein referred to, means the cost to the Owner, but such cost shall not include any Architect's or engineer's fees."

The revised contract defined the cost of work as follows:

"8. Definition of the Cost of the Work—The cost of the work, as herein referred to, means the cost to the Owner, but such cost shall not include any Architect's or engineer's fees, cost of furnishings or the cost of the land."

The revised contract also contained a clause not found in the original contract as proposed by plaintiffs, which read as follows:

"2. The Architect will make or procure preliminary estimates on the costs of the work and will endeavor to keep the actual cost of the work as low as may be consistent with the purpose of the development with proper material and workmanship."

The contract as revised was signed by all parties.

A feasibility study, dated January 10, 1969, gave an estimated cost of the building and land at $272,150. Defendant Georges discussed the study with plaintiffs. He indicated that the amount was not excessive in light of the $250,000 ceiling the defendants had asked for and that he would recommend to his partners that they should go ahead on the project.

The plans and specifications for the project were completed in July of 1969 and submitted to prospective bidders; the total low bid received was $283,500. Plaintiffs then met with defendant Georges who informed them that the cost of the building was too high and requested revisions in the plans. Plaintiffs commenced work on the plan revisions, which involved the deletion of the second floor; however, prior to the completion of the revisions, defendant Georges ordered plaintiffs to stop work on the revisions and to do plans and specifications for a new building. This new building would consist of 3000 square feet to house dental offices; according to plaintiffs it was possible to construct such a building for $90,000. However, the final plan, owing to the inclusion of public washrooms and public lobby and entranceway, required 3600 square feet. The plans and specifications were sent out to bidders and in December of 1969, a low bid of $130,734 was received by plaintiffs and forwarded to defendant Georges. Subsequently defendant Georges informed plaintiffs that the cost was higher than expected and requested plaintiffs to make revisions. On the basis of plaintiffs' revisions, a revised low bid of $109,992.72 was received.

In January of 1970, defendant Georges informed plaintiffs that he and the other defendants did not wish to pursue the project. Plaintiffs forwarded their bill for the project in the amount of $12,536.39, to

defendants. The amount was based on 4% of the bid on the original building of $283,500 which came to $11,340, plus revision cost of $1,196.39. The defendants refused to pay the bill and this suit resulted.

At trial it was defendants' position that plaintiffs agreed to complete the entire project for a maximum cost of $250,000. Plaintiffs argued that the contract, drafted by defendant Stepanich constituted the complete and final agreement of the parties thereto. The trial court found as a matter of law that the contract was incomplete, leaving entirely up to plaintiffs the cost, how large the building was going to be, and permitted the defendants to supply the missing cost figure by the use of parol evidence. The sole issue on appeal is whether the trial court erred in holding that the contract was incomplete and in allowing the use of parol evidence to supply the missing portions of the contract.

In reaching its decision, the trial court relied on *Spitz v. Brickhouse* (1954), 3 Ill. App. 2d 536, 123 N.E.2d 117, and we find that this case is decisive of the issue before us.

In *Spitz v. Brickhouse*, plaintiffs, architects, entered into a standard A.I.A. form contract with the defendant for the design of a home for defendant. As their fee, plaintiffs were to receive 10% (referred to as the basic rate) of the cost of the work; upon completion of the preliminary studies they were to receive a sum equal to 25% of the basic rate computed upon a reasonable estimated cost. Upon completion of plans and specifications, plaintiffs took bids; the lowest bid received was for $39,000. However, defendant, contending that the parties orally agreed that the maximum cost of the house would not exceed $25,000, rejected the bid and refused to proceed with the work. The trial court admitted evidence of the oral agreement over plaintiffs' objection and found for defendant; plaintiffs appealed. On appeal the reviewing court stated:

> "The law is well established that where a written contract is uncertain, ambiguous or incomplete, evidence of a contemporaneous oral agreement to prove the entire contract is admissible. (Citations.) * * * If it is silent in essential particulars, parol evidence is admissible to establish the missing parts, although inadmissible to contradict those unambiguous terms expressed in the document. [Citations.]" (3 Ill. App. 2d 536, 539-40, 123 N.E.2d 117, 119.)

The *Spitz* court went on to point out that amongst other things the contract failed to provide for the style of the house, the number of rooms, its dimensions, the quantity and quality of the materials to be used in erecting it. The court cited a number of cases in which parol evidence was held admissible to prove an agreement as to the maximum cost where the form contract was silent.

Plaintiffs here rely on *Mitterhausen v. South Wisconsin Conference*

*Association* (1944), 245 Wis. 353, 14 N.W.2d 19, in which parol evidence was held inadmissible. The plaintiffs in *Spitz v. Brickhouse* also relied on *Mitterhausen*. In distinguishing *Mitterhausen,* the *Spitz* court stated:

> "Viewing the contract through the prism of different circumstances, the court in the Mitterhausen case concluded that the contract contained the complete agreement of the parties. There was evidence of "extensive negotiations" culminating in the contract, and the owner's approval bottomed on sketches, drawings, plans and specifications rather than on some specific price. That is, the owner was not so much concerned with cost, as such, but concerned more that the structure to be erected conform to the sketches, drawings, plans and specifications which had been agreed upon. Under these circumstances, while there are points of variance, our views are not incompatible with those expressed in the *Mitterhausen* case." (3 Ill. App. 2d 536, 541-42, 123 N.E.2d 117, 120.)

We find the same reasoning applicable in distinguishing the *Mitterhausen* case from the case presently before us.

Plaintiffs place great emphasis on the fact that the final version of the contract into which all parties entered was drafted by one of the defendants who was a practicing attorney; that he made no mention of a $250,000 cut off or for that matter any specific cost ceiling in the contract; and therefore the revised contract prepared by defendant Stepanich represented the complete and final agreement between the parties. However, as the trial court pointed out and we agree:

> "Obviously then, even though there is an attorney, as one of the parties for the defendant, if there is something missing from the contract, a guideline to give to the plaintiffs as to how much they should go, how big it should be, how much it should cost, then that guideline should come in."

■■ Whether a written contract was intended to be the complete and final agreement, must be determined from the language of the contract and the circumstances of the case. (*Stevens v. Fanning* (1965), 59 Ill. App. 2d 285, 207 N.E.2d 136.) Further, the construction given a contract by a trial court will not be set aside unless it is contrary to the manifest weight of the evidence. *Sigma Delta Tau Society v. Alongi* (1976), 44 Ill. App. 3d 650, 358 N.E.2d 906.

■ It is undisputed that the contract between the parties here, failed to provide for the total cost of the project. In the face of the absence of such an essential part of the contract, the trial court was correct in finding that the contract was incomplete and in allowing parol evidence to supply the missing cost figure.

Plaintiffs have not raised as an issue the sufficiency of the evidence to

support the findings of the trial court; therefore we need not consider that issue.

The judgment of the circuit court of Lake County is therefore affirmed.

Affirmed.

RECHENMACHER and NASH, JJ., concur.