CLEMENT H. IRELAND *et al.*, Plaintiffs-Appellees, *v.* ANGELO ESPOSITO *et al.*, Defendants-Appellants.

First District (4th Division)    No. 79-1703

Opinion filed February 19, 1981.

Angelo Ruggiero, of Chicago (Michael R. Esposito, of counsel), for appellants.

Edward W. Boehm, Jr., and Garrett L. Boehm, both of Chicago (Boehm & Boehm, of counsel), for appellees.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiffs, Clement and Agnes Ireland and Ireland's Inc., brought this action in the chancery division of the circuit court of Cook County, seeking both equitable and legal relief from defendants, Angelo Esposito, Pioneer Investment and Development Co. (also known as Pioneer Development Corp.), and Parkway Bank and Trust Company.

In their counts for relief in equity, plaintiffs sought specific performance of a contract for the sale of plaintiffs' real estate and the restaurant business conducted on that real estate, prayed for an accounting from defendants to determine the amounts due under the sales contract, and sought to reform a $60,000 promissory note given to plaintiffs in connection with the contract by defendant Pioneer Investment and Development Co. In their count for legal relief, plaintiffs sought judgment for $60,000 due on the promissory note. After a bench trial, all of the essential relief requested by plaintiffs was granted to them, and defendants brought this appeal.

On appeal, defendants contend: (1) that the trial court erred by refusing to invoke the parol evidence rule to bar plaintiffs' testimony which contradicted the terms of the written contract; (2) that the orders for an accounting and specific performance are not supported by the evidence; and (3) the judgment entered on the promissory note is against the manifest weight of the evidence.

We affirm. The evidence presented at trial showed the following pertinent facts to exist.

For many years, Clement and Agnes Ireland, through Ireland's Inc., owned improved real estate in Chicago on which they operated a restaurant. Though the Irelands enjoyed many years of success, by early 1975 the Irelands had suffered a string of severe financial setbacks. The restaurant was losing money, and the Irelands were unable to pay many of their bills. As a result several actions were brought against the Irelands and their corporation by creditors, including an action to foreclose the mortgage on their property. To rectify their problems, the Irelands decided to sell the real estate and the restaurant business. They listed the property and the business with a real estate broker, seeking to sell both for a total of $225,000.

In response to an advertisement in a newspaper, defendant Esposito contacted the Irelands to tell them he was interested in buying the property and the business. In late March 1975, Esposito and Clement Ireland met at the restaurant. Esposito told Clement that he had been in the real estate business for many years and thought he could solve the restaurant's problems if he owned the business. Clement told Esposito about all the financial problems the Irelands were having and, according to Clement, he told Esposito he wanted to sell both the property and the business for $225,000 (according to Esposito this figure was $150,000). Esposito, after learning of many of the debts owed by the Irelands and the pending actions against them, said he would consider the deal.

Around April 1, according to Esposito, or on April 14 at about 5 p.m., according to the Irelands, Esposito returned to the restaurant to meet with Clement Ireland. The two of them sat at a booth and discussed the deal. Agnes Ireland was present during part of this discussion. There is substantial dispute as to the conversations that took place at this meeting. It is undisputed that Esposito had with him two documents which he had prepared and which he showed to the Irelands. The first was a standard form "Real Estate Sale Contract" on which Esposito had filled in the necessary blanks. The second was the $60,000 promissory note.

Besides all the standard terms found in such a contract, the real estate sale contract, which was dated "April, 1975," contained the following essential provisions with the filled in portions in italics and underlined:

"1. *Angelo Esposito or his nominees* (purchaser) agrees to purchase at a price of *$150,000.00* on the terms set forth herein, the following described real estate \* \* \*:

*Legal description to be inserted*

*commonly known as 800 North LaSalle, Chicago, Illinois* \* \* \*, together with the following property presently located thereon: *all the existing and outstanding stock of the Illinois corporation known as Ireland's, Inc., which includes the exclusive use of the name Ireland.*

\* \* \*

3. Purchaser has paid *$10,000.00* as earnest money to be applied on the purchase price, and agrees to pay or satisfy the balance of the purchase price, plus or minus prorations, at the time of closing as follows:

\* \* \*

(b) The payment of *$80,000.00 subtracting all outstanding bills of the corporation* and the balance payable as follows: *The buyer will assume the exist. mortgage of approx. $70,000.00* to be evidenced by the note of the purchaser \* \* \*."

The contract also provided that closing would occur on May 1, 1975, and that the seller agreed to pay the real estate broker's commission. Esposito had already signed this contract as purchaser when he showed it to the Irelands at the meeting in the restaurant.

The promissory note that Esposito had with him was a standard short-form collateral note dated "April 1, 1975." Under the note, "Pioneer Investment and Development Co." promised to pay to the order of "Clement Ireland and Agnes Ireland his wife" the sum of "$60,000" together with eight percent annual interest in four yearly installments of $12,000 plus interest with the first installment due May 1, 1976. The note also gave the Irelands a security interest in "All the equipment at 500 No. LaSalle pertaining to the restaurant only." At the time Esposito showed this note to the Irelands at the meeting, it was signed, "Pioneer Investment and Development Co. by Angelo Esposito, President."

At the conclusion of the meeting, which lasted approximately one-half hour, the real estate sale contract was signed by Clement and Agnes Ireland. Esposito apparently kept the only copy of the contract but gave the note to the Irelands. The parties do not dispute that an agreement to sell the property and the business was reached at this meeting. The parties also do not dispute that Esposito and Clement Ireland agreed that Clement would stay on as Esposito's employee and manage the restaurant after May 1, 1975, the closing date of the contract.

Over objection, the Irelands were allowed to testify to the conversation they had with Esposito at the meeting. Both Irelands testified that the agreement reached by the parties was to sell the property and the business for $210,000. When they saw the contract and the note prepared by Esposito, the Irelands questioned him about the terms. They contended that Esposito told them the real estate contract was merely a contract to sell the building and the land for a price of $150,000 and that the note was intended to represent the sale of the restaurant business and its equipment for $60,000. Esposito allegedly said that it was better to carry out the transaction in this manner because the Irelands would then have to pay a brokerage commission only on the $150,000 in the real estate contract, and also because the Irelands would end up paying less income taxes on the sale if it was a bifurcated transaction. When asked why the note was signed by Pioneer Investment and Development Co., Esposito allegedly said that he was the sole owner of that corporation and he wanted the corporation to own the restaurant business rather than himself personally. Though the Irelands had some reservations, they signed the contract, and the deal was completed. One of the reasons they signed so hastily was because the court hearing on the foreclosure of their property was to be held in a few days and Esposito promised to pay what was immediately owed on the mortgage, approximately $32,000, by the time of the hearing.

In defense, Esposito testified that the "Real Estate Sale Contract" was the final and complete agreement reached by the parties. He said the $150,000 purchase price in that contract was the price the parties agreed to for the sale of both the property and the business. In his attempt to explain the existence of the note, Esposito said this note was the one called for by the contract. He contended that the contract called for an $80,000 note less any outstanding debts owed by Ireland's Inc. He said that Clement Ireland and he agreed that the outstanding debts of the business were approximately $20,000 and thus the $60,000 note represented the $80,000 amount less this approximation.

Esposito also testified that he gave the Irelands a $3,000 check at the meeting, representing part of the $10,000 down payment required by the contract. Esposito contended that he paid the remainder of the down payment at a later date in April. However, the Irelands did not testify that they received this $3,000 at the time the contract was entered into, and they apparently contended that Esposito paid the entire $10,000 down payment at a later date by paying one of the Irelands' creditors.

Following the making of the contract, the Irelands transferred title to the property to Esposito or his nominee, and title is currently held by defendant Parkway Bank and Trust Co., as land trustee, with Esposito as the apparent beneficiary under the land trust.

On May 1, 1975, no closing was held as called for by the contract, and

no formal closing has ever been held. From May 1, 1975, and until sometime in 1976, Clement Ireland acted as manager of the restaurant with Esposito as his employer. It is undisputed that Esposito has now assumed full ownership and control over the business.

Much evidence, in the form of numerous cancelled checks made out to the Irelands and third parties, was presented by defendants to show the debts of Ireland's Inc., which were paid by Esposito subsequent to the parties entering into the contract. Some of these payments were disputed by the Irelands. There was also evidence to show that Clement Ireland, while employed by Esposito as manager of the restaurant after May 1, 1975, paid some of the corporation's debts that had accrued prior to May 1, 1975, with money generated by the restaurant business after May 1. The evidence is inconclusive as to how much Clement actually paid out, and the Irelands claimed the exact amount could only be determined by resort to the corporation's account books, which were in the possession of Esposito. Esposito denied he had these account books. Defendants attempted to show that the sum total of all the amounts paid by Esposito and the Irelands in connection with pre-May 1, 1975, debts of Ireland's Inc., was at least $80,000. Since it appears that Esposito paid the $70,000 due on the outstanding mortgage, defendants alleged that the Irelands had been fully paid the $150,000 called for by the real estate sale contract, and no further amounts were due the Irelands for the sale of the real estate or the restaurant business.

In their complaint, plaintiffs alleged that the actual agreement between the parties had been to sell the property and the business for $210,000, and plaintiffs sought specific performance of this agreement. Plaintiffs also sought an accounting to determine all of the debts of Ireland's Inc., that had been paid by Esposito so they could find out how much of the $80,000 mentioned in the real estate sale contract was still owed by Esposito. Plaintiffs also asserted that they had never received any payments on the $60,000 note, and that amount was presently due. Plaintiffs also sought to have the note reformed to read as being made by "Pioneer Development Corporation," since plaintiffs discovered that "Pioneer Investment and Development Co." did not exist as a corporation. It appears that no corporation at all existed at the time the note was given to the Irelands but that Esposito received articles of incorporation approved by the Secretary of State for "Pioneer Development Corporation" shortly after the note was transferred to the Irelands.

The trial court reformed the note as requested. The court also found that the parties had actually agreed to sell both the property and the restaurant business for $210,000—$150,000 representing the sale price of the real property and $60,000 representing the sale price of the business. The court entered judgment in favor of plaintiffs for the $60,000 due on

the note and ordered defendants to make an accounting of all pre-May 1, 1975, debts of Ireland's Inc., which defendants had paid to determine how much was still owed by defendants on the $80,000 called for in the real estate contract, and the court further ordered specific performance of that contract following such an accounting.

OPINION

I

Defendants first contend that the trial court was precluded by the parol evidence rule from considering plaintiffs' testimony which tended to show that the actual agreement of the parties was to sell the property and the business for $210,000 rather than the $150,000 called for in the "Real Estate Sale Contract." Defendants argue that the $150,000 figure must be deemed conclusive. Defendants conclude that since defendants' evidence, though disputed, shows that Esposito had paid at least $80,000 in outstanding debts of Ireland's Inc., which were accrued prior to May 1, 1975, and since it is undisputed that Esposito has assumed and paid off the $70,000 real estate mortgage called for by the contract, the contract has been fully performed and the Irelands are entitled to no relief.

■■ The parol evidence rule provides that if the parties intend that a written instrument alone is to constitute the complete agreement between them, or, if the instrument states that it alone is to constitute the entire agreement between them, or if the instrument itself appears complete, certain, and unambiguous, then parol evidence of a prior or contemporaneous agreement is inadmissible to vary the terms of that instrument. (See *Kendall v. Kendall* (1978), 71 Ill. 2d 374, 375 N.E.2d 1280; *Telluride Power Transmission Co. v. The Crane Co.* (1904), 208 Ill. 218, 70 N.E. 319; *Bleck v. Stepanich* (1978), 64 Ill. App. 3d 436, 381 N.E.2d 363; *Tondre v. Pontiac School District No. 105* (1975), 33 Ill. App. 3d 838, 342 N.E.2d 290; *Rudolph v. O. D. Jennings & Co.* (1962), 38 Ill. App. 2d 92, 186 N.E.2d 80; *Unique Watch Crystal Co. v. Kotler* (1951), 344 Ill. App. 54, 99 N.E.2d 728.) The limits to the parol evidence rule are stated in the rule itself. The rule excludes parol evidence only when a court first determines that the written instrument is or was intended to be the complete and unambiguous agreement of the parties. One of the initial determinations a court must make is which instrument or instruments represent the agreement of the parties. When two instruments are executed at the same time, for the same purpose, they should be construed to be as part of the same transaction and read and interpreted together. (*Branch v. Barnes* (1958), 19 Ill. App. 2d 472, 154 N.E.2d 337.) In the present case, the court was faced with two instruments, the contract and the note, apparently executed for the same purpose at the same time. The contract states it is for the sale of both the property and the stock in the restaurant business

known as Ireland's Inc. The note gives a security interest to the Irelands in the equipment of the restaurant business. Thus, it appears that the two instruments refer to parts of the same thing.

However, the two instruments when read together create peculiar ambiguities and possible contradictions. The contract calls for a full purchase price of $150,000 for both the property and the business. In reference to how this amount is to be paid, that contract says that $10,000 is given as a down payment with the remainder to be paid at time of closing as follows: "The payment of $80,000.00 subtracting all outstanding bills of the corporation and the balance payable as follows: the buyer will assume the exist. mortgage of approx. $70,000.00 to be evidenced by the note of the purchaser * * *." This language in the contract itself creates certain ambiguities that undoubtedly had to be explained. The total price was to be $150,000, but payments were to be for a total of $160,000—$10,000 down payment, $80,000 payable at closing, and the assumption of a $70,000 mortgage. Also, the contract does not clearly specify that a note was required by the transaction. From the language of the contract, one cannot determine whether an $80,000 note, a $70,000 note, or no note was required.

Added to the problems with the language of the contract is the existence of the $60,000 note. No $60,000 note is called for by the language of the contract. Also, the note called for in the contract, if there was to be a note, was to be given at the time of closing, May 1, 1975, but the $60,000 note was given at the time the contract was entered into in April. Additionally, the note's maker is "Pioneer Investment and Development Co.," a party not even mentioned in the contract.

■■ Faced with all these ambiguities and possible contradictions, the trial court was justified in making the initial determination that the instruments, on their face, did not represent the complete and unambiguous agreement of the parties at least as to the terms constituting the total amount to be paid. Once this determination was made, the parol evidence rule was rendered inapplicable because it only bars parol evidence of terms contradicting the terms in a written instrument if that instrument, upon inspection, is found to be the complete and unambiguous agreement as to those terms. Hence, the parol evidence rule did not bar plaintiffs' testimony that the actual agreement reached was to sell both the property and the business for $210,000—$150,000 representing the sale of the real property and $60,000 representing the sale of the business.

■■ In view of the fact that the parol evidence rule was inapplicable to this case, the only contention defendants can make is that the trial court's finding that the actual agreement was for a total price of $210,000 is erroneous. Since this finding of fact depended on the trial court's weighing of the evidence and determining the credibility of the witnesses,

our review of this finding is limited to determining whether it is against the manifest weight of the evidence. (See *Lundy v. Boyle Industries, Inc.* (1977), 46 Ill. App. 3d 809, 361 N.E.2d 321.) In the present case, the testimony presented at trial simply consisted of two contradictory explanations for the contract and the $60,000 note, one explanation by plaintiffs and one by defendants. The trial court chose to believe plaintiffs, and we find no basis for setting aside the trial court's decision.

## II

Defendants next contend that the orders for an accounting and specific performance are not supported by the evidence. Defendants' brief on this issue presents a rather convoluted argument. They apparently are not contending that plaintiffs had an adequate remedy at law but instead are arguing that plaintiffs' claims for equitable relief should have been denied because of various equitable defenses. For example, defendants argue that plaintiffs' claims should have been barred by the "clean hands" doctrine or should have been barred by laches. Though there is nothing in the record to support either claim, we particularly note that defendants raised neither of these issues in the proceedings at the trial level, and we find no reason to consider them now.

Defendants also assert that plaintiffs' equitable actions should have been barred because it was the plaintiffs who should have accounted to defendants and not defendants to plaintiffs. The basis for this argument appears to be that the Irelands paid some of their debts accrued prior to May 1, 1975, out of proceeds collected after that date, while Clement Ireland was acting as manager of the restaurant business for Esposito. Defendants contend that the Irelands should account for these payments so defendants can determine how much of the $80,000 stated in the contract is still due.

We have searched the record diligently, and we find no formal request, by way of pleading or otherwise, by defendants for an accounting from plaintiffs. Even so, we note that the Irelands alleged that the total amounts they had paid out could only be determined by resorting to the corporation's account books, which they contended were in the possession of Esposito. Esposito denied this, but it was for the trial court to determine who should be believed. Accordingly, we find no merit to defendants' second contention. '

## III

Defendants' final contention is that the judgment rendered on the $60,000 note is against the manifest weight of the evidence. However, the basis for defendants' argument is that the contract entered into between the parties was for a total price of $150,000, and defendants conclude that

the judgment on the note is against the manifest weight of the evidence because Esposito has allegedly paid the entire $150,000. Since we have already concluded that the trial court properly found that the total agreed price was $210,000, there is no need to consider defendants' argument any further, and we find it is without merit.

Accordingly, for the reasons noted, we affirm the judgment of the trial court.

Affirmed.

ROMITI, P. J., and JOHNSON, J., concur.