LANNY WHITEHEAD, Plaintiff-Appellee, *v.* FLEET TOWING COMPANY, Defendant.—(English and American Insurance Co. *et al.*, Garnishees-Appellants.)

Fifth District    No. 82—162

Opinion filed November 9, 1982.—Rehearing denied December 6, 1982.

Lawrence O. Taliana and Gordon R. Broom, both of Burroughs, Simpson, Wilson, Hepler, Broom & McCarthy, of Edwardsville, for appellants.

Deborah S. Forman, of Lakin, Herndon & Peel, P.C., of East Alton, for appellee.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

This garnishment action was brought by Lanny Whitehead, plaintiff, to collect a personal injury judgment from insurance policies issued by defendants, Lloyds of London, English and American Insurance Co. and Orion Insurance Co. The trial court entered judgment in favor of plaintiff for $76,000 plus interest, from which defendants-garnishees appeal.

Fleet Towing Company, a maritime company doing business on the Mississippi River in 1972, hired the brokerage firm of Lawton-Byrne-Bruner of St. Louis, Missouri, to procure liability insurance for two of its towboats. Lawton-Byrne-Bruner subsequently referred the coverage to another broker, Puritan Marine Insurance Co. of Boston. Puritan Marine decided to have the insurance coverage written in three layers. The primary layer was to provide coverage for the first $50,000 of any loss. The second layer was to provide coverage for $100,000 in excess of the first $50,000 and the third layer was to provide for coverage of $850,000 in excess of $150,000 of any one loss.

Puritan Marine referred the securing of the excess insurance to K. Bell Associates, a New York broker, which in turn referred the business to John Holman & Sons, Ltd., in London. In the course of negotiations for the excess insurance, K. Bell, by telex, advised John Holman & Sons, Ltd., that the first $50,000 of coverage was placed

with Glacier Insurance Company. John Holman & Sons, Ltd., in turn, approached various London insurers and placed the excess coverage with defendants-garnishees.

Plaintiff was injured on October 4, 1972, during the effective dates of the excess insurance policies. During the course of litigation, Fleet Towing discovered that primary insurance was never procured by Puritan Marine. Instead, a certificate of insurance was found to have been issued by Puritan Marine showing that primary coverage of $50,000 was placed with Standard Marine Insurance Co., Ltd. No insurance policy, however, was ever issued.

Prior to trial, plaintiff's attorney made a demand to settle the case for $70,000 which was communicated to a representative of the excess carriers. In June 1977, the excess carriers authorized an expenditure of $20,000 as their contribution to settle the case. On the first day of trial, December 12, 1977, the demand to settle was withdrawn. A jury trial was held in Madison County and a judgment was rendered on December 19, 1977, in favor of Lanny Whitehead and against Fleet Towing in the sum of $126,000.

In August 1978, Fleet Towing filed a lawsuit in Wayne County, Missouri, against its broker, Lawton-Byrne-Bruner, seeking monetary damages for the broker's failure to procure primary insurance. Lanny Whitehead intervened in that suit and received $25,000 in settlement and in return signed a release. A partial satisfaction of judgment was filed in this action for $50,000 of the judgment obtained against Fleet Towing.

Subsequently, Utah Home Insurance Co. commenced a lawsuit against Fleet Towing and its creditors in the United States District Court in St. Louis, Missouri. Utah Home Insurance Co. had issued a hull insurance policy in the amount of $250,000 on one of the towboats owned by Fleet Towing, which was later destroyed. Numerous creditors claimed an interest in the insurance proceeds, and in order to resolve the claims, Utah Home Insurance Co., by way of interpleading, tendered its policy limits into the Federal Court. On June 20, 1979, Lanny Whitehead intervened in that proceeding asserting his Madison County judgment as a lien against the insurance proceeds. Judgment was entered in the Federal Court based on affidavits filed on behalf of Lanny Whitehead that $76,000 remained unsatisfied on the Madison County judgment. The court then distributed to Whitehead the sum of $24,248.74 as his *pro rata* share of the insurance proceeds.

Whitehead filed this garnishment action in Madison County, Illinois, against the excess insurance carriers alleging that $76,000 plus

interest remained unpaid on his judgment. The court ruled in favor of Whitehead, plaintiff, and against the excess insurers, defendants-garnishees.

On appeal, defendants-garnishees (hereinafter garnishees) maintain that they are not liable on the excess insurance policy and assert three arguments in support thereof. First, garnishees contend that plaintiff signed a release which releaséd them from liability. Second, they maintain that Fleet Towing's failure to secure primary insurance constituted either a breach of warranty or a material misrepresentation which voided their potential liability on the excess policies. Third, garnishees argue that plaintiff's acceptance of $25,000 for partial satisfaction of $50,000 voids their obligation under the excess policies.

Garnishee's first contention is that the release signed by plaintiff was a general release which absolved them from liability. Plaintiff, on the other hand, argues that the release is more limited and does not discharge the excess insurance carriers in the garnishment action.

■ The dispute regarding the scope of plaintiff's release stems in part from the fact that two distinct releases were offered into evidence. Though both releases bear plaintiff's signature and are dated May 11, 1979, their terms differ in some significant respects. One release, marked as plaintiff's exhibit 7, is a four-page long instrument which bears the Madison County caption of this proceeding. This release, which is obviously a comprehensive and carefully drafted document, purports to release only those persons and firms liable for the first $50,000 of the judgment while reserving the right to proceed for the remainder of the judgment against Fleet Towing and its excess carriers. The other release, by contrast, is a simple one-page document which by its terms relates only to the allegations and issues made up in case No. C—66—76 in the circuit court of Wayne County, Missouri, and does not include any reservation of rights. Despite this discrepancy, plaintiff fails to demonstrate any relation between the two releases even though he cites both in his brief. This omission, we believe, suggests that the more complex instrument was executed by plaintiff in anticipation of future litigation. Our discussion of plaintiff's release, henceforth, will be limited to the second release, marked as defendant's exhibit 4. As the releases are inconsistent, we are obliged to give effect to the general release as it is not claimed that it was executed under any mistake of law or fact.

A release is a contract whereby a party abandons a claim to a person against whom that claim exists. (*Murphy v. S-M Delaware, Inc.* (1981), 95 Ill. App. 3d 562, 420 N.E.2d 456.) The intention of the parties controls the scope and effect of the release, and such intent is

discerned from the language used and the circumstances of the transaction. *LaGrange Federal Savings & Loan Association v. Rock River Corp.* (1981), 97 Ill. App. 3d 712, 423 N.E.2d 496.

The release at issue states, in pertinent part, as follows:

"*** I, Lanny Whitehead, for and in consideration of the sum of Twenty-five Thousand and 00/100 ($25,000.00) Dollars *** do forever Release and Discharge Fleet Towing Company, Inc., a corporation, Lucas & Murphy, Attorneys at Law, St. Louis, Missouri, Lawton-Byrne-Bruner Insurance Agency Company, a corporation, and The St. Paul Fire & Marine Insurance Companies, their heirs, executors, administrators and all firms, corporations and persons on their behalf liable, from all claims, demands, damages, actions or causes of action arising from or growing out of those allegations and issues made up in Case No. C—66—76, presently on file in the Circuit Court of Wayne County, Missouri ***."

■ Garnishees contend that this release is a general release because it releases Fleet Towing and any person, firm or corporation liable in its stead. Accordingly, garnishees maintain that by virtue of this release plaintiff released garnishees, the excess insurers of Fleet Towing. Although the release is couched in language normally found in general releases, we cannot accept garnishee's construction. Under Illinois law, when an instrument contains recitals of, or other reference to, specific claims and also words of general release, the words of general release are limited to the particular claim to which reference is made. (*Gladinus v. Laughlin* (1977), 51 Ill. App. 3d 694, 366 N.E.2d 430.) The specific reference to the Wayne County, Missouri, case, we believe, was an attempt to limit the effect of the release and therefore should not be construed to restrict plaintiff's rights in this separate and distinct garnishment action.

In addition, plaintiff contends that the release is ineffective because he was a seaman and was unaware of the existence of the excess carriers. We believe that this contention is without merit and need not be addressed.

Garnishees' second contention is that they are not obligated to pay the proceeds of the excess insurance because of the insured's failure to procure primary insurance. Garnishees maintain that this omission constituted either a breach of warranty or a misrepresentation which relieved them of liability under the policy. There is no suggestion that any question exists as to whether in the procurement of insurance K. Bell Associates and John Holman & Sons, Ltd., were agents or subagents of Fleet Towing or Lawton-Byrne-Bruner and

therefore garnishees cannot be held at fault in relying on representations made to them on behalf of the insured.

A warranty in insurance enters into and is part of the contract, and must be literally true to permit a recovery on the policy while a representation is not part of the contract but an inducement thereto. A representation must relate to a material matter, and is only required to be substantially true. (*Spence v. Central Accident Insurance Co.* (1908), 236 Ill. 444, 86 N.E.104.) Although garnishees present persuasive arguments as to whether the insured's omission was a misrepresentation or breach of warranty, we do not believe it is necessary to make such a distinction in the present case. In either instance, our conclusion would be the same; that is, the failure to obtain primary insurance negated any duty of garnishees to honor the excess insurance coverage.

Primary insurance coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability. Primary insurers generally have the primary duty of defense. Excess or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted. A second insurer thus greatly reduces his risk of loss. This reduced risk is reflected in the cost of the policy. *Olympic Insurance Co. v. Employers Surplus Lines Insurance Co.* (1981), 126 Cal. App. 3d 593, 178 Cal. Rptr. 908.

The established manner of operations of the underwriters at Lloyds of London is well known in the insurance trade and is discussed at length in *Edinburgh Assurance Co. v. R. L. Burns Corp.* (C.D. Cal. 1979), 479 F. Supp. 138. Lloyds has no facilities in this country for investigating and adjusting losses and for such services relies on domestic companies. The domestic companies are required by warranties in the insurance policies to carry part of the risk and if these domestic companies are responsible for a loss, then Lloyds is likewise responsible. *Millers' National Insurance Co. v. Wichita Flour Mills Co.* (10th Cir. 1958), 257 F.2d 93, 104.

Although there are no cases on point in Illinois, there is authority for the proposition that an excess or secondary policy will not come into operation in the absence of primary coverage. Excess coverage clauses in liability policies can only be obtained when there is other primary coverage available. (*Mid-Century Insurance Exchange v. State Farm Mutual Automobile Insurance Co.* (1981), 98 Ill. App. 3d 493, 424 N.E.2d 686.) Until such time as the limits of primary insurance coverage are exhausted, secondary coverage does not provide

any collectible insurance. *Farmers Automobile Insurance Association v. Iowa Mutual Insurance Co.* (1966), 77 Ill. App. 2d 172, 221 N.E.2d 795.

■ When the primary insurance does not exist, as in the present case, the excess carrier is exposed to greater risks than were originally contemplated. Furthermore, because the excess carriers were unaware that there was no primary insurance, the increased risks were not reflected in the cost of insurance coverage. We believe that the insured's failure to procure primary coverage is such a material defect that regardless of whether a warranty or misrepresentation theory is pursued, the garnishees cannot be held liable on the excess insurance policy. Consequently, we find that the trial court erred in ordering garnishees to pay over to plaintiff the sum of $76,000.

Garnishees' third contention is that the acceptance of $25,000 for a partial satisfaction of $50,000 by plaintiff voids the obligation of the excess carriers. In support of this argument, garnishees cite *United States Fire Insurance Co. v. Lay* (7th Cir. 1978), 577 F.2d 421, for the proposition that the excess carrier is not rendered liable unless the underlying primary insurer has actually paid the limits of the policy. The court in that case noted that a settlement for less than the primary limit would remove the incentive of the primary insurer to defend in good faith or to discharge its duty to represent the interests of the excess carrier. Although this argument has merit, we believe that it is not necessary to reach this issue in the case at bar, where primary coverage did not exist.

■ Finally, plaintiff contends that the equitable doctrine of *laches* bars garnishees from using defenses to the policies. Plaintiff claims that he was prejudiced by garnishees' delay in disclaiming liability under the insurance policy, which he maintains was not done until the garnishment action. Though we do not accept this contention, we note that plaintiff did not raise this issue at the trial level and we need not consider it now. *Ireland v. Esposito* (1981), 93 Ill. App. 3d 584, 417 N.E.2d 738.

For the foregoing reasons, the judgment of the trial court is reversed.

Reversed.

JONES and WELCH, JJ., concur.