AHN BROTHERS, INC., *et al.*, Plaintiffs-Appellants, v. DOMINIC J. BUT-TITTA *et al.*, Defendants-Appellees.

Second District  Nos. 84—1079, 84—1141 cons.

Opinion filed May 9, 1986.

L. Steven Platt, of Arnold & Kadjan, of Chicago, for appellants.

Roger C. Nelson, Jr., of Wheaton, for appellees.

JUSTICE STROUSE delivered the opinion of the court:

In this consolidated appeal, plaintiffs appeal from two orders of the trial court—one which directed a finding in favor of defendants on the declaratory judgment count of plaintiffs' complaint, and the other which dismissed with prejudice the remaining counts of the complaint.

Plaintiffs, Ahn Brothers, Inc., Dongkee Ahn and Sungkee Ahn, filed this tort action against defendants, Dominic J. Buttitta and Dominic A. Buttitta, seeking to recover damages and to set aside a release. Defendants owned and operated a shopping center located at 716 South Barrington Road in Streamwood. In August 1978, plaintiffs purchased a restaurant located in that shopping center and, in conjunction with the purchase, took an assignment of lease for the premises occupied by the restaurant. Pursuant to the assignment, plaintiffs assumed all liabilities of the lease, including rent, late-payment charges, shared–increased–property-tax expense, shared–common-area expense, shared–common-area lighting, and reimbursement for reasonable attorney fees and costs upon default.

In June 1980, plaintiffs sold the restaurant to N.J., Inc. for $78,000, payable in installments over four years and backed by a security interest in the restaurant and equipment. N.J., Inc. took an assignment of the lease covering the restaurant premises, with plaintiffs remaining liable in the event of default.

In the fall of 1980, N.J., Inc. encountered financial difficulty and failed to pay its monthly rental payments. Defendants contacted plain-

tiffs in December 1980 and demanded N.J., Inc.'s December rent. Plaintiff Dongkee Ahn then met with Jack Mishler, one of the principals of N.J., Inc., and entered into a oral agreement whereby plaintiffs retook possession of the restaurant and agreed to resume making rent payments to defendants.

Plaintiffs paid the December and January rent and penalties. No other payments were made.

In February 1981, Mishler ceased operation of the restaurant and abandoned it. Plaintiffs went into the restaurant a few times to clean it, but they did not reopen it. In April, Defendants changed the locks. Plaintiff Dongkee Ahn testified that he then telephoned defendant Dominic A. Buttitta and asked him why he changed the locks. Buttitta's response was, "Bring the rent. If you bring the rent, you can open the door." Plaintiff claimed, and defendants denied, that plaintiffs later unsuccessfully attempted to obtain the keys in person from defendant.

Defendant Dominic J. Buttitta explained in his answers to interrogatories that the front-door lock was rekeyed on April 1, 1981, so that the premises could be secured from vandalism. Prior to this, defendant did not have a key to the front door. Plaintiffs took no other action and never reentered the premises.

In August 1981, defendants' attorney sent plaintiffs a release in which plaintiffs would be excused from any obligation to pay back rents, taxes, late charges and interest, in exchange for plaintiffs' release of any and all claims they had under the lease and to all personal or trade fixtures located at the restaurant. Plaintiffs signed the release both individually and for the corporation.

Plaintiffs filed suit in June 1982 to set aside the release and to recover damages against defendants for their allegedly tortious conduct. The cause proceeded to trial on plaintiffs' fifth amended complaint which sought: (1) damages for trespass to realty, (2) damages for conversion, (3) damages for interference with prospective business advantage, and (4) declaratory judgment to test the validity and binding effect of the release.

On November 1, 1984, a bench trial was held on the declaratory judgment count. At the close of plaintiff's case, the court granted defendants' motion for a directed finding and thereby declared the release to be valid and binding. The court also set the remaining three counts for trial. Plaintiffs filed a notice of appeal as to this order on November 13, 1984. Prior to trial on the remaining counts, defendants filed a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619). Following

argument, the court granted the motion to dismiss with prejudice, concluding that the release extinguished all remaining claims under the complaint. Plaintiffs timely filed a notice of appeal as to this order. The appeals have been consolidated by this court.

■ Plaintiffs first argue that, in directing a finding in favor of defendants on the declaratory judgment count, the trial court was required to follow the standard set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, namely, whether all the evidence, when viewed in its aspect most favorable to the plaintiffs, so overwhelmingly favors defendants that no contrary verdict based on that evidence could ever stand. Defendants submit that the proper standard is set forth in section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1110), which requires the court in a bench trial at the close of the plaintiff's proofs to "weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence."

It is well settled that in a bench trial the defendant may move for judgment at the close of the plaintiff's case. (*McHenry State Bank v. City of McHenry* (1983), 113 Ill. App. 3d 82, 84; see Ill. Rev. Stat. 1983, ch. 110, par. 2—1110.) The trial court must first determine, as a legal question, whether the plaintiff has presented a *prima facie* case and must grant the defendant's motion if the plaintiff has failed to do so. If the plaintiff has presented a *prima facie* case, the court must then weigh the evidence considering the credibility of the witnesses and the quality of the evidence. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154-55; *McHenry State Bank v. City of McHenry* (1983), 113 Ill. App. 3d 82, 84; see Ill. Rev. Stat. 1981, ch. 110, par. 2—1110.) If this weighing process negates some of the evidence necessary to the plaintiff's *prima facie* case, the court should enter judgment for the defendant. However, the motion should be denied if sufficient evidence remains to establish the plaintiff's *prima facie* case. Contrary to the *Pedrick* standard, the court is not to view the evidence in the light most favorable to the plaintiff. On appeal, the decision of the trial court should not be reversed unless it is contrary to the manifest weight of the evidence. *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154.

■ Consequently, the *Pedrick* standard the plaintiffs seek to impose is not appropriate under the present circumstances. The trial court proceeded under the correct standard as set forth in section 2—1110 of the Code of Civil Procedure. Upon a review of the record, we conclude the trial court's determination is not contrary to the manifest weight of the evidence. Accordingly, the directed finding that the release was valid and binding will not be reversed.

Plaintiffs then make a series of arguments directed at the trial court's finding that the release was valid and binding. They first argue that where a landlord violates the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1983, ch. 110, par. 9—101 *et seq.*), the exculpatory release is invalid and that the landlord may not seize the tenants' property in payment for rent unless there is a separate court action for distress (Ill. Rev. Stat. 1983, ch. 110, par. 9—301), whereby a warrant must be filed and the action proceeds in the circuit court (see *Faubel v. Michigan Boulevard Building Co.* (1934), 278 Ill. App. 159, 170).

Second, plaintiffs argue that the release is void for lack of valid consideration. They maintain the defendants' wrongful conduct (locking plaintiffs out of the restaurant and interfering with their efforts to sell) was the sole "consideration" and, thus, the release was unenforceable.

Third, plaintiffs argue that the release is unenforceable because of defendants' fraudulent misrepresentations. Plaintiffs claim that defendants misrepresented the amounts due under the lease and, based on these misrepresentations, plaintiffs signed the release. Plaintiffs allegedly owed only $2,500 (two months' rent), whereas defendants demanded approximately $14,000, including $2,794 in attorney fees and a mechanic's lien claim of $2,054.75.

Fourth, plaintiffs argue that the release is void because it was executed under duress, claiming that economic duress or business compulsion invalidates the release. They contend that they were coerced into signing the release because they were locked out of the restaurant and that the wrongful act of locking them out was the trigger for the action. Plaintiffs argue that defendants' wrongful conduct caused severe economic hardship and left plaintiffs with no viable alternatives.

Fifth, plaintiffs argue the release is unconscionable in that plaintiffs were required to give up $78,000 in restaurant equipment in exchange for a $7,500 rent obligation.

To all of these arguments, defendants reply that a mutual release is a contract subject to contract law (*Whitehead v. Fleet Towing Co.* (1982), 110 Ill. App. 3d 759, 762; *Touhy v. Twentieth Century-Fox Film Corp.* (1979), 69 Ill. App. 3d 508, 512), which may be set aside only for fraud in the execution, fraud in the inducement, mutual mistake or mental incompetence (see *Rudolph v. Santa Fe Park Enterprises, Inc.* (1984), 122 Ill. App. 3d 372, 374). Plaintiffs primarily focus on the issue of duress, while defendants claim that plaintiffs freely and voluntarily signed the release.

The trial court order specifically held that the release was "valid and binding" and "not void due to duress or fraud." In so holding, the

court found the issues of fact against the plaintiffs after the plaintiffs finished their proofs. The trial court considered the following facts.

Plaintiffs owned the restaurant which was sold. The purchaser had financial difficulty and abandoned the restaurant. Plaintiffs became liable for lease payments and paid two months' rent through January and then stopped. The restaurant was closed in February, with no real effort to reopen by plaintiffs, and no further payment. The landlord testified that there had been vandalism in the restaurant and a break-in, which was the reason for changing the lock in April when plaintiffs claim they were evicted. Plaintiffs never tried to reenter thereafter and continue the business. While they claimed they were trying to sell the restaurant, no contract of sale was ever signed nor were any genuine buyers produced. Plaintiffs stopped putting money and effort into the business in February. They took no action until August when they executed a release, relieving themselves of the expense burden that had accumulated since January. Plaintiffs testified that after signing the release they thought that "everything was over [and] perfectly cleared up."

■ The issue of fraud and duress is one of fact, to be judged in light of all the circumstances surrounding a given transaction. (*Schlossberg v. E.L. Trendel & Associates, Inc.* (1978), 63 Ill. App. 3d 939, 943.) We conclude that the trial court's determination that the release was valid is not against the manifest weight of the evidence. Accordingly, we uphold the finding in favor of defendants on the issues of fraud and duress.

■ Plaintiff's final contention is that, even if the release is valid and enforceable, it does not bar their other tort claims of trespass to realty, conversion, and interference with a prospective business advantage. The relevant language of the release provides that plaintiffs "agreed to release any and all claims which [they] may have under the lease agreement dated April 10, 1977, and to any and all personal or trade fixtures located at [the restaurant]." Plaintiffs maintain that the release is limited to claims "under the lease" or contract actions alleging a breach, not claims in tort. Defendants, on the other hand, argue that the parties intended the release to be a general release which is valid as to all claims of which the signing parties had actual knowledge or could have discovered upon reasonable inquiry.

It is well established that the intention of the parties controls the scope and effect of the release. Such intent is discerned from the language of the instrument when read in light of the circumstances surrounding the transaction. (*Gladinus v. Laughlin* (1977), 51 Ill. App. 3d 694, 696; see *Whitehead v. Fleet Towing Co.* (1982), 110 Ill. App. 3d

759, 762-63.) When an instrument contains recitals of, or other reference to, specific claims and also words of general release, the words of general release are limited to the particular claim to which reference is made. 110 Ill. App. 3d 759, 763; see *Gladinus v. Laughlin* (1977), 51 Ill. App. 3d 694, 696.

Plaintiffs' claim for trespass is based on their possessory right to the premises under the terms of the lease. In fact, plaintiffs' counsel admitted in argument that the trespass count was barred by the release. Thus, the parties intended any claim for trespass to be released, and plaintiffs cannot now assert otherwise.

■ Similarly, plaintiffs' claim for conversion is barred by the release. That claim is based on the alleged "lock out" by defendants and the resultant conversion of the property within the premises. The release specifically states that plaintiffs "agreed to release any and all claims which [they] have *** to any and all personal or trade fixtures located at [the restaurant]." To now claim that damages for conversion are warranted is in direct conflict with this language of the release having such a claim.

■ Plaintiff's claim for interference with a prospective business advantage is based on defendants' failure or refusal to negotiate with a prospective purchaser regarding an assignment of plaintiffs' lease. Plaintiffs allege that under the terms of the lease defendants were obligated to consent to the assignment and they frustrated those efforts. The elements of the tort of interference with prospective advantage are set out in *Belden Corp. v. InterNorth, Inc.* (1980), 90 Ill. App. 3d 547. The plaintiff must have a reasonable expectancy of entering a valid business relationship, and defendant must purposely interfere and defeat this legitimate expectancy, thereby causing harm to the plaintiff. (90 Ill. App. 3d 547, 552.) Here, it is apparent that the business relationship contemplated by the plaintiffs was the assignment of the lease. This relationship depended upon the right to occupy the premises, and all rights to occupancy under the lease were released in August. These were within the scope of the release, and the trial court properly dismissed the three tort counts of plaintiff's complaint.

For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

NASH, P.J., and HOPF, J., concur.