Keith **HOLLAND, Individually and on Behalf of the community Estate Frances Therese Holland, born Manley**

v.

**STANLEY SCRUBBING WELL SERVICE, and Fisher's Auto Parts, Inc.**

Civ. A. No. 84–3396–LC.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

June 25, 1987.

Norman L. Williams, Lake Charles, La., Bob F. Wright, Domengeaux & Wright, Lafayette, La., for plaintiffs.

Carey J. Guglielmo, Mathews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, La., for LIGA.

Kathleen F. Drew, Juneau, Hill, Judice, Hill & Adley, Lafayette, La., for Twin City Fire Ins. Co.

Stephen E. Broyles, Glusman, Moore, Wilkinson, Arbour, Broyles & Glusman, Baton Rouge, La., for defendants Stanley Scrubbing.

Joe A. Brame, Brame, Bergstedt & Brame, Lake Charles, La., for Fischer Auto Parts.

Donald C. Brown, Carmouche, Gray & Hoffman, Lake Charles, La., for intervenors.

## OPINION

VERON, District Judge.

This is a personal injury arising out of an automobile accident in 1983 which occurred in Lake Charles, Louisiana. This Court has original jurisdiction because of the diversity of citizenship of the parties and amount in controversy. The issues of liability and damages have been settled pursuant to a compromise between the parties. However, there remains one legal issue for determination by this Court: Is Twin City Fire Insurance Company, an excess carrier, required to "drop-down" and act as a primary insurer where the primary insurer selected by the insured has become insolvent and is unable to satisfy its obligations under its policy?

## FACTS

The facts as established by the pleadings and by the stipulations of the parties are as follows. On July 7, 1983, Frances Therese Holland was injured while driving in Lake Charles, Louisiana. The driver of the other vehicle, Dan S. Glover, was an employee of Stanley Swabbing & Well Service, Inc. ("Stanley Swabbing"), a Texas corporation. At the time of the accident, Stanley Swabbing was insured under a primary automobile liability policy issued by National Allied Insurance Company, formerly United General Insurance Company ("United General"), with limits of $250,000. Although domiciled in Texas, United General was an admitted insurer in Louisiana.

In addition to the United General policy, Stanley Swabbing was also insured under an umbrella liability policy issued by Twin City. The Twin City policy provides, inter alia, excess coverage over and above various policies, including the United General policy. On October 26, 1986, United General was placed in liquidation.

On July 5, 1984, the plaintiffs commenced the instant action in State Court naming Dan S. Glover, Stanley Swabbing, United General and Allied Chemical Company as defendants. Subsequently, Allied Chemical removed this action to Federal Court and was later dismissed from the suit. Plaintiffs then filed a Third Amending and Supplemental Petition on April 24, 1986 naming Twin City. Owing to United General's admitted status in Louisiana and the Louisiana residency of the plaintiffs, their claims against the defendants are subject to coverage by the Louisiana Insurance Guaranty Association ("LIGA") as a "covered claim." La.R.S. 22:1379(3). Following United General's liquidation, Stanley Swabbing filed a Third Party Demand against LIGA and the Texas Property and Casualty Insurance Guaranty Association ("TGA"), claiming that both were United General's successors in interest.[*]

On May 4, 1987, the parties stipulated to a partial compromise of this action with the plaintiffs reserving their rights against LIGA and TGA. Pursuant to the terms of that stipulation, the parties have agreed to submit to the Court for determination the issue of whether Twin City is obligated to assume United General's indemnity obligations as a result of United General's insolvency.

## DISCUSSION OF LAW

The prime consideration in the interpretation of an insurance policy is to ascertain the true intention of the parties from the language of the policy as a whole. *Harvey v. Mr. Lynn's Inc.*, 416 So.2d 960 (La.App. 2d Cir.1982). It is well settled in our jurisprudence that a

---

[*] The plaintiffs' claims are also potentially subject to coverage by the TGA as United General was admitted in Texas and Stanley Swabbing is a Texas resident. Texas Insurance Code Art. 21.-28–C(5)(2).

valid insurance policy is a contract between the insured and the insurer and is thus the law between them. *Fruge v. First Continental Life and Accident Ins. Co.*, 430 So.2d 1072 (La.App. 4th Cir.1983), writ denied, 438 So.2d 573 (La. 1983); *Moncrief v. Blue Cross-Blue Shield of Arkansas*, 472 So.2d 299 (La. App. 3rd Cir.1985).

As in the case of other written agreements, the terms and provisions of an insurance contract are construed in their general and popular meaning. *Nida v. State Farm Fire & Casualty Co.*, 454 So.2d 328 (La.App. 3rd Cir.1984), writ denied, 458 So.2d 486 (La.1984). All ambiguities must be construed in favor of the insured and against the insurer, however, where the language of an insurance contract is clear and free of ambiguity, it constitutes the contract between the parties and courts have no authority to change or alter its terms under the guise of interpretation. *Glass Services Unlimited v. Modular Quarters*, 478 So.2d 1005 (La.App. 3rd Cir. 1985). In addition, insurers have the right to limit their liability and to impose whatever conditions they please upon their obligations under the policy in the absence of conflicts with laws or public policy. *Fruge v. First Continental Life and Accident Ins. Co., supra.*

*Radar v. Duke Transportation, Inc.*, 492 So.2d 532, 533–34 (La.App. 3rd Cir.1986).

In *Continental Marble & Granite Co. v. Canal Insurance Co.*, 785 F.2d 1258 (5th Cir.1986), the Fifth Circuit has analyzed the contention that an excess carrier "drops-down" to assume the obligations of an insolvent primary insurer.

Imposing the duty of indemnification on [an excess carrier] would, in effect, transmogrify the policy into one guaranteeing the solvency of whatever primary insurer the insured might choose. *See Golden Isles Hospitals, Inc. v. Continental Casualty Co.*, 327 So.2d 789, 790 (Fla.App.1976). An excess liability insurer obviously does not anticipate this heavy onus:

Excess or secondary coverage is coverage whereby, under the terms of the

policy, liability attaches only after a predetermined amount of primary coverage has been exhausted. A second insurer thus greatly reduces his risk of loss. This reduced risk is reflected in the cost of the policy.

*Whitehead v. Fleet Towing Co.*, 110 Ill.App.3d 759, 66 Ill.Dec. 449, 442 N.E.2d 1362, 1366 (1982).

... [Such a rule] would require insurance companies to scrutinize one another's financial wellbeing before issuing secondary policies. The insurance world is complex enough; to impose this additional burden on [insurance] companies ... would only further our legal system's lamentable trend of complicating commercial relationships and transactions.

Id. at 1259.

The Twin City policy in question here states that:

The Company [Twin City] will indemnify the insured [Stanley Swabbing] for ultimate net loss in excess of the underlying limit ... [for liability] caused by an occurrence which takes place anywhere in the world.

The policy further defines "underlying limit" as

... the amounts of applicable limits of liability of the underlying insurance as stated in the Schedule of Underlying Policies less the amount, if any, by which aggregate of such insurance has been reduced by payment of loss.

Additionally, condition 7 of the policy provides:

The insured shall make claim for any loss under this policy as soon as practicable after (a) the insured shall have paid ultimate net loss in excess of the underlying limits or the self insured retention with respect to any occurrence.

Twin City relies upon these contractual provisions to support its position that it is only an excess insurer and that it does not "drop-down" to assume the liability of the primary insurance carrier. LIGA, on the other hand, maintains that the policy is ambiguous and must be interpreted against

the insurer, Twin City. LIGA contends that the language in paragraph 8 of the policy's "Conditions" section requires Twin City to "drop-down" and assume primary coverage. That paragraph states:

8. Other Insurance

The insurance afforded by this policy shall be excess insurance *over any other valid and collectible insurance* (except when purchased specifically to apply in excess of this insurance) available to the insured, *whether or not described in the Schedule of Underlying Insurance Policies,* and applicable to any part of ultimate net loss, whether such other insurance is stated to be primary, contributing, excess, or contingent.... [emphasis added]

On two recent occasions, courts have been called on to interpret the identical Twin City policy provisions. Judge Adrian Duplantier of the Eastern Division of Louisiana in the matter of *Steve D. Thompson Trucking, Inc. v. Twin City Fire Insurance Co.,* Civil Action No. 86–2399 (E.D.La. January 7, 1987), appeal docketed No. 87–3114 (5th Cir. March 1, 1987) granted summary judgment in favor of Twin City on the identical issue of whether Twin City, as excess carrier was obligated to "drop-down" to assume the liability of an insolvent primary insurer. (Written reasons were not issued in that case) Additionally, the Ohio Court of Appeals, in *Wurth v. Ideal Mutual Insurance Co.,* No. CA 86–02–011 (Ohio App. April 27, 1987), rejected the argument that the identical Twin City policy provisions required Twin City to "drop-down."

In a well-reasoned opinion, the Ohio Court of Appeals in *Wurth* states:

The condition paragraph which contains the 'valid and collectible' language, upon which appellant relies, is number 8 and entitled 'Other Insurance.' Based on our reading of this paragraph, we conclude that it is intended to provide a framework for assigning contribution obligations among other all applicable insurance providers of either primary, contributing, excess or contingent coverage.

As we read Condition number 8, 'collectible' does not refer to the actual payment of a sum of money, but instead refers to the existence of other applicable insurance coverage based on the particular occurrence in question. Whether payment of other applicable and available insurance (be it primary, contributing, excess or contingent) actually takes place is not the focus of inquiry under the paragraph in question. Instead, the focus is on the *existence* of such applicable and available insurance. *Molina v. U.S. Fire Ins. Co.* (C.A. 4, 1978), 574 F.2d 1176; *Geerdes v. St. Paul Fire and Marine Ins. Co.,* (1983), 128 Mich.App. 730 [341 N.W.2d 195]. *St. Vincent's Hospital & Medical Center v. Ins. Co. of North America* (1982), 117 Misc.2d 665, 457 N.E.2d 670.

Whatever confusion the use of the word 'collectible' in paragraph 8 creates, it cannot overcome the paragraph's attendant declaration that it is 'excess' liability coverage for amounts 'over,' *i.e.,* above, beyond, greater than, or exceeding any other available and applicable insurance except such insurance as is specifically purchased to be in excess of Twin City's excess policy.[1] We see no ambiguity when this condition is read in its entirety and in concert with other paragraphs of this policy's "Conditions" section.[2]

After examining Twin City's entire policy and using the previously provided rules of interpretation/construction, we conclude that there is no ambiguity in Twin City's policy as to its coverage. Indeed, it is clear that it was never the intention of Twin City and ... [the insured] that the former should become the latter's primary insurance provider in the event ... [the primary insurer] became insolvent. Consequently, the trial court erred in concluding that due to a policy ambiguity, Twin City 'dropped down' to provide primary liability coverage when ... [the primary insurer] became insolvent. We believe that the trial court ... focused all [of its] attention on one sentence of this policy's "Conditions" section and relied upon it to the exclusion of the

balance of the contract. Such an interpretation is distorted and legally inappropriate.

---

[1] Condition 8 is itself supported by Condition 14 entitled 'Maintenance of Underlying Insurance,' which provides that in the event that the insured fails to maintain primary insurance as promised, Twin City's policy does not 'drop down' but continues to provide excess insurance as if the primary coverage which was supposed to have been obtained was, in fact, purchased.

[2] For example, Condition number 7, entitled 'Loss Payable' and which immediately precedes 'Other Insurance.' This paragraph makes it clear that a loss is *not* payable by Twin City until 'the insured has paid the ultimate net loss in excess of the underlying limit or self-insured retention with respect to any occurrence.' *Guaranty National Ins. Co. v. Bayside Resort, Inc.,* (D.C.V.I., 1986), 635 F.Supp. 1456, 1459. Thus, until ... [the insured] demonstrated it made payment to the Wurths in excess of its underlying police malpractice policy limits, Twin City had no excess insurance coverage obligation based on this occurrence.

Id. at pp. 12–14.

## CONCLUSION

After examining the entire policy in the instant case and the applicable rules of interpretation and construction, this Court, like the court in *Wurth,* must conclude that there is no ambiguity in the Twin City policy regarding coverage. The policy does not provide that Twin City "drop-down" when a primary insurer becomes insolvent, nor was it ever the intention of Twin City and Stanley Swabbing (the insured) that Twin City would assume the liability of Stanley Swabbing's primary insurer in the event that insurer became insolvent.