CARGILL, INC., a Corporation and St. Paul Fire & Marine Insurance Co., Appellees,

v.

COMMERCIAL UNION INSURANCE CO. and Huffman Towing Company, a Corporation, Appellants.

No. 88–2706.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1989.

Decided Nov. 13, 1989.

Rehearing Denied Dec. 12, 1989.

Frank S. Thackston, Greenville, Miss., for appellants.

James W. Herron, St. Louis, Mo., for appellees.

Before ARNOLD, Circuit Judge, BRIGHT, Senior Circuit Judge, and BEAM, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Commercial Union Insurance Company (Commercial Union) appeals the district court's judgment, in a case tried with the consent of the parties before a magistrate, requiring Commercial Union, as the insurer of a shipment of grain that was lost when a barge sank, to respond for the entire amount of the grain lost. Commercial Union contends that because St. Paul Marine & Fire Insurance Company (St. Paul) also insured the cargo and because both policies contained "other insurance" clauses, the magistrate erred and the loss should be shared by the two insurers in proportion to the total amount of coverage provided by each policy, without considering any amounts deductible under either policy. For the reasons stated below, we reverse and remand and direct that the two insurers share in the loss as set forth in this opinion.

## I. BACKGROUND

The parties stipulated the facts. In May of 1984, Cargill, Inc. (Cargill) and Huffman Towing Co. (Huffman) entered into an agreement for the shipment of a barge load of grain owned by Cargill from Council Bluffs, Iowa, to Terre Haute, Louisiana. As part of this agreement, Huffman promised to fully insure the cargo from the time of loading until the time of unloading. To fulfill its promise, Huffman obtained a policy from Commercial Union that afforded cargo insurance coverage for Cargill's grain. Cargill already had a separate policy with St. Paul covering the grain. After the grain was loaded onto Huffman's barge, but prior to shipment, the barge sank and the grain was lost. The parties stipulated the loss to be $194,158.07.

Cargill submitted a claim to Huffman for its lost cargo and Huffman reported the claim to its marine insurance broker, which forwarded the claim to Commercial Union. Commercial Union initially took the position that its policy did not cover the loss and declined coverage. Cargill then submitted the claim to St. Paul, which paid Cargill $94,157.07, representing the amount of the loss minus $100,000 deductible under St. Paul's policy.

Commercial Union later determined that its policy covered Cargill's loss. As a re-

sult, Commercial Union paid Cargill $90,-000, representing the unpaid balance of the claim minus $10,000 deductible under Commercial Union's policy. Huffman paid the remaining $10,000 of Cargill's claim. Thus, despite Cargill's status as the named party in this action, St. Paul stands as the real party in interest.

Each policy contained an "other insurance" clause disclaiming liability when other insurance covered the loss. The "other insurance" clauses read as follows:

COMMERCIAL UNION

"If there is any other insurance covering the property insured hereunder which in absence of this insurance would cover the loss or damage hereby covered, then the Assurer shall not be liable hereunder for more than the excess over and above the amount collectable from such other insurance...."

ST. PAUL

"On all shipments moving under insured bills-of-lading issued by others, or where others have agreed to insure, it is mutually understood and agreed that the insurance provided under this policy is secondary and contingent."

The parties consented to trial before a magistrate under 28 U.S.C. § 636(c) (1982 & Supp. V 1987) on an agreed stipulation of facts and on cross motions for summary judgment. The insurers agreed that both policies covered the loss and that both policies contained "other insurance" clauses. Commercial Union, however, contended that the "other insurance" clauses conflicted irreconcilably and that the loss should be prorated between the policies based on the proportion that the policy limit of each ($600,000 for Commercial Union and $2,600,000 for St. Paul) bears to the total insurance. Cargill maintained that the policies could be reconciled in such a way that Commercial Union respond for the entire loss.

The magistrate found in favor of Cargill but not on the theory advocated by either party. The magistrate held that the existence of other insurance transformed the Commercial Union policy from a property insurance policy into a liability insurance policy, thereby rendering inapplicable Commercial Union's "other insurance" clause. In the alternative the magistrate held that the "other insurance" clauses were reconcilable and that Commercial Union should respond for the entire loss. The magistrate also held that Commercial Union must pay prejudgment interest. This appeal followed.

II. DISCUSSION

A. "Other Insurance" Clauses

■ This case involves competing "other insurance" clauses. An "other insurance" clause represents an attempt on the part of an insurer to limit its liability where two or more policies cover the loss. There are three types of "other insurance" clauses: "excess" clauses, "pro rata" clauses and escape clauses. An "excess" clause provides that where other insurance covers the loss, the "excess" policy covers only liability above the maximum coverage of the primary policy. 8A J. Appleman & J. Appleman, *Insurance Law and Practice* § 4909 (rev. vol. 1981). A "pro rata" clause provides that where other insurance covers the loss, the "pro rata" policy covers only some pro rata share of the total loss. *Id.* § 4908. An escape clause provides that coverage ceases where other insurance covers the loss. *Id.* § 4910. Because the parties in this case agree that both policies cover the loss, the case turns upon whether the "other insurance" clauses at hand can be reconciled so that one insurer responds for the entire amount of the loss and the other insurer's coverage is deemed excess, or whether the loss must be shared by the two insurers. This in turn will depend on the types of "other insurance" clauses involved.

■ The magistrate treated the other insurance clauses as a secondary issue. Primarily, the magistrate reasoned that Commercial Union's coverage for property loss became liability insurance coverage.[1] The

---

**1.** The magistrate relied on the following language in Commercial Union's policy:

magistrate then concluded that Commercial Union's "other insurance" clause did not apply because the two policies covered different risks.

St. Paul concedes that in this respect the magistrate erred. The magistrate's reasoning contains at least two flaws. First, if Commercial Union's insurance were liability insurance, then Commercial Union could not be liable prior to a determination that Huffman bears legal responsibility for the lost cargo. Second, the magistrate's reading rendered Commercial Union's "other insurance" clause illusory. Under the magistrate's interpretation, Commercial Union would be precluded from taking advantage of its "other insurance" clause whenever other property insurance existed, because the other insurance would automatically transform Commercial Union's property insurance into liability insurance. For these reasons, we reject the magistrate's primary holding.

■ Commercial Union argues that the magistrate also erred by alternatively holding that the "other insurance" clauses were reconcilable in favor of St. Paul. Commercial Union contends that the clauses are mutually repugnant and that the loss should be prorated between the two parties based on the proportion that the policy limit of each bears to the total insurance. Federal admiralty law governs the interpretation of these marine insurance policies, unless no established federal admiralty law exists, in which case state law applies. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 316–21, 75 S.Ct. 368, 371–74, 99 L.Ed. 337 (1955). Where two insurance policies cover the same risk and each contains an "excess" clause, courts generally disregard the clauses as mutually repugnant, with each insurer sharing the loss based on the proportion that its policy limit bears to the combined limit of both policies. 16 R. Anderson & M. Rhodes, *Couch On Insurance 2d* § 62:2 (rev. ed. 1983); 8A J. Appleman & J. Appleman, *Insurance Law and*

*Practice* § 4909, at 399 (rev. vol. 1981). While some federal cases take this position, *see, e.g., Reliance Ins. Co. v. St. Paul Surplus Lines Ins.*, 753 F.2d 1288, 1290 (4th Cir.1985), no established federal admiralty rule exists. *Cf. Rini v. Transocean Contractors Inc.*, 1981 A.M.C. 1128, 1130 (W.D.La.1981) (two escape clauses held mutually repugnant and liability prorated on basis of limits of each policy); *Voisin v. Ocean Protein Inc.*, 321 F.Supp. 173, 177–78 (E.D.La.1970) (escape clause and "pro rata" clause held mutually repugnant and liability shared equally by insurers). Therefore, we must follow applicable state law. The law of the state of issuance governs the interpretation of an insurance policy. *Interco Inc. v. Mission Ins. Co.*, 808 F.2d 682, 684 (8th Cir.1987) (citing *Tickner v. Union Ins. Co.*, 425 S.W.2d 483, 485 (Mo.App.1968)). Commercial Union issued its policy to Huffman in Missouri and St. Paul issued its policy to Cargill in Minnesota.

■ Missouri follows the general rule that where "excess" clauses conflict, the clauses are mutually repugnant and the insurers must share liability based on the proportion that the policy limit of each bears to the total insurance. *Arditi v. Massachusetts Bonding & Ins. Co.*, 315 S.W.2d 736, 743 (Mo.1958). While the Minnesota rule differs slightly, it yields the same result in this case. Minnesota courts prorate the loss based on the limits of each policy only when the insurance policies at issue contemplate the risk equally. *Auto Owners Ins. Co. v. Northstar Mut. Ins. Co.*, 281 N.W.2d 700, 703 (Minn.1979); *Woodrich Constr. Co. v. Indemnity Ins. Co. of North America*, 252 Minn. 86, 89 N.W.2d 412, 422–23 (Minn.1958). In determining whether the policies equally contemplate the risk, Minnesota courts examine the language of the policies to see if only one policy specifically describes the risk or contemplates primary liability for the risk. *Auto Owners Ins. Co.*, 281

---

Where insurance is effected by owner(s), shipper(s), and/or consignee(s), this insurance shall not be considered as concurrent therewith and it is agreed that the insurance here-

under covers only the legal or assumed liability of the Assured as common carriers, towers, insurers, forwarders, bailees, custodians or otherwise for loss of or damage to such cargo.

N.W.2d at 704. In this case the parties have stipulated that both policies covered the loss. Furthermore, it is apparent from reading the policies that they contemplate the risk equally because each refers to coverage for loss due to sinking vessels. Therefore, under Minnesota law, as under Missouri law, if both clauses at hand are "excess" clauses, then they are mutually repugnant and the loss must be divided proportionately.

■ Commercial Union's "other insurance" clause is undoubtedly an "excess" clause; it provides that where other insurance covers the loss, Commercial Union will be liable only for the excess over the amount paid by the other insurer. St. Paul's policy provides that where another insurer has agreed to cover the loss, St. Paul's coverage becomes "secondary and contingent." This phrase and "excess" are synonymous. *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal. App.3d 593, 178 Cal.Rptr. 908, 910 (Cal.Ct. App.1981) ("Excess coverage or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted."); *Whitehead v. Fleet Towing Co.*, 110 Ill.App.3d 759, 66 Ill.Dec. 449, 453, 442 N.E.2d 1362, 1366 (Ill.App.Ct.1982) (same). Therefore, we are dealing with two conflicting "excess" clauses that by definition are mutually repugnant.

■ St. Paul argues that Huffman's agreement to insure Cargill's grain changes this analysis and that as a result of the agreement St. Paul's "other insurance" clause takes precedence. St. Paul apparently bases this contention on the wording of St. Paul's "other insurance" clause, which states that "where others have agreed to insure ... the insurance provided under this policy is secondary and contingent." St. Paul fails to recognize that Commercial Union's "other insurance" clause contains an equivalent component. It states that if there exists other insurance "which in absence of [Commercial Union's coverage] would cover the loss," then Commercial Union shall only be liable for the excess. There is no practical difference between the wording or effect of the two clauses. The conflict inheres in the nature of "excess" clauses; each is trying to supersede the other. It follows that neither can supersede the other, *i.e.*, the clauses are mutually repugnant.[2]

St. Paul further argues that the two clauses are reconcilable, relying on *United States v. Trinity Universal Ins. Co.*, 457 F.2d 950 (5th Cir.1972), to support its position. *Trinity* involved two conflicting "excess" clauses that the court held were reconcilable. St. Paul contends that this case resembles *Trinity* and that the clauses at issue should be reconciled in favor of St. Paul. The prevailing clause in *Trinity* stated that "[t]his policy does not insure against: Loss, if at the time of loss or damage, there is any other valid and collectible insurance which would attach if this insurance had not been effected...." *Id.* at 953. This clause resembles Commercial Union's "excess" clause more than it resembles St. Paul's. Thus, if we were to follow *Trinity*, Commercial Union would likely prevail. We do not apply the *Trinity* case here. Instead we follow the law of Minnesota and Missouri and hold that the two clauses are mutually repugnant and that the loss must be prorated between the two insurers in accord with the proportion that the policy limit of each bears to the combined limit of both policies.

### B. Sharing the Loss

■ Commercial Union argues that the loss should be prorated as set forth above, but without reference to the applicable deductible in each policy ($100,000 for St. Paul and $10,000 for Commercial Union). In support of this proposition, Commercial Union cites 16 R. Anderson & M. Rhodes, *Couch On Insurance* § 62:2 (rev. ed. 1983) (citing *Pacific Power & Light Co. v. Transport Indem. Co.*, 460 F.2d 959 (9th Cir.

---

**2.** The difference between the dissent and the majority is that the dissent focuses primarily on

St. Paul's "other insurance" clause.

1972)). *Pacific Power* involved a $25,000 liability loss insured by two policies, each of which contained an "excess" clause. Transport Indemnity Company (Transport) issued one policy, which contained no deductible. Home Insurance Company (Home) issued the other policy, which contained a $25,000 deductible. Because the liability loss did not exceed the amount of Home's deductible, the insured paid the loss and then sought reimbursement from Transport alone. The court held that the "other insurance" clauses were mutually repugnant, that Transport was liable only for a pro rata share of the loss and that Home's deductible was relevant only between Home and its insured. Thus, after Home applied its deductible, the insured recovered only a portion of the liability loss, despite being named in Transport's policy as an insured with no deductible.

Commercial Union would have us follow *Pacific Power*, ignore the deductibles and prorate based on the proportion that the coverage limit of each policy bears to the combined coverage limit of both policies. Commercial Union proposes the following formula for calculating its liability:

23.1% × $194,158.07 (total loss) = $44,850.51 [3]

Commercial Union arrives at 23.1% as its proportionate share by dividing its policy limit of $600,000 by the combined policy limit of the two policies ($2,600,000). St. Paul would bear the remainder of the loss in the sum of $149,307.56.

St. Paul argues that if the loss must be prorated, an amount equal to St. Paul's $100,000 deductible should be shifted to Commercial Union so that Commercial Union's share of the loss would amount to $144,850.51 plus interest. In support of this rationale St. Paul cites *Insurance Co. of North America v. Continental Cas. Co.*, 431 F.Supp. 316, 319 (E.D.Pa.1977) (Becker, J.),[4] *rev'd on other grounds*, 575

F.2d 1070 (3d Cir.1978). In that case, Judge Becker commented on the *Pacific Power* method of proration. In support of the argument that deductibles should be considered, Judge Becker noted that a policy containing a large deductible assumes less of an economic risk than the same policy with no deductible. In addition, he observed that strictly applying the *Pacific Power* method of proration could leave an insured with a gap in coverage, such as occurred in *Pacific Power*. Judge Becker therefore prorated the loss and then shifted an amount equal to the deductible from the insurer with a deductible to the insurer with no deductible. Application of Judge Becker's method where there are two deductibles, as in the case at hand, requires shifting an amount equal to the larger deductible to the insurer with the smaller deductible.

We approve of this method of sharing except that we consider the deductibles before prorating. Up to the $100,000 of St. Paul's deductible there was no other insurance triggering Commercial Union's "other insurance" clause. Thus, the first $100,000 is not covered by St. Paul, but is covered by Commercial Union. In other words, Commercial Union and its insured (Huffman)[5] must respond up to $100,000 and then the remainder must be prorated between the two insurers.

Commercial Union and its insured are responsible for the following:

| | |
|---|---|
| $100,000.00 | (St. Paul's deductible; Huffman's share is $10,000) |
| $21,750.51 | (remaining loss of $94,158.07 after deductibles, multiplied by 23.1% or $600,000/$2,600,000, which represents Commercial Union's pro rata share) |
| $121,750.51 | (total obligation of Commercial Union and Huffman; |

---

3. Using this analysis, Commercial Union and Huffman, who already paid $100,000 to Cargill, have overpaid their proportionate share of the loss.

4. Judge Edward R. Becker now serves on the Third Circuit.

5. Huffman promised Cargill that the cargo would be "fully insured." Thus, Huffman bears responsibility for Commercial Union's $10,000 deductible. We note, however, that Huffman has already satisfied this obligation.

Huffman's share is $10,-
000)

St. Paul is responsible for the following:
$72,407.56  (remaining loss of $94,158.07
after deductibles, multi-
plied by 76.9% or $2,000,-
000/$2,600,000, which rep-
resents St. Paul's pro rata
share)

Under this method the insurers only
share the loss to the extent that their "oth-
er insurance" clauses are mutually repug-
nant.

### C.  Prejudgment Interest

The magistrate awarded judgment
against Commercial Union only (not Huff-
man) and added prejudgment interest. We
agree that the magistrate properly added
prejudgment interest.

The general rule of this circuit
allows prejudgment interest in admiralty
cases at the discretion of the trial court
absent exceptional or peculiar circumstanc-
es. *Federal Barge Lines, Inc. v. Republic
Marine Ins.*, 616 F.2d 372, 373 (8th Cir.
1980) (citing *United States v. M/V Gopher
State*, 614 F.2d 1186, 1190 (8th Cir.1980)).
Moreover, the trial court's award of pre-
judgment interest may be reversed only for
abuse of discretion. *Id.* (citing *Lekas &
Drivas, Inc. v. Goulandris*, 306 F.2d 426,
429 (2d Cir.1962)). This case involves nei-
ther exceptional circumstances nor an
abuse of discretion.

The prejudgment interest, however, will
need to be recalculated on remand. We
observe that because the judgment as en-
tered runs only against Commercial Union,
it would be inappropriate to calculate pre-
judgment interest on the $10,000 deductible
paid by Huffman.

### III.  CONCLUSION

We reverse and remand and direct the
entry of an appropriate judgment against

Commercial Union in the amount of $21,-
750.51, which represents liability of $121,-
750.51 less $100,000 already paid to Cargill.
The magistrate should recalculate prejudg-
ment interest from November 19, 1984, to
May 14, 1986, when Cargill received $100,-
000 from Commercial Union and Huffman,
plus prejudgment interest on the balance
still owed to the date of judgment.

Commercial Union may tax fifty percent
of its taxable costs and disbursements on
this appeal.

ARNOLD, Circuit Judge, dissenting.

I respectfully dissent. I think this judg-
ment should be affirmed.

This case does not really turn on conflict-
ing other-insurance clauses at all. It is not
that complicated. It is simply a case where
the policy of one insurer, St. Paul, is by its
own clear terms secondary and contingent
only.

Cargill, owner of the grain, bought a
policy from St. Paul. The pertinent lan-
guage is as follows:

On all shipments moving under insured
bills-of-lading issued by others, or where
others have agreed to insure, it is mutu-
ally understood and agreed that the in-
surance provided under this policy is sec-
ondary and contingent.

The key phrase for the present case is,
"where others have agreed to insure."
This is what happened here. Huffman, the
carrier, did agree to insure, and to insure
"fully." When Huffman made this prom-
ise to Cargill, the St. Paul policy became
secondary and contingent. There is no oth-
er way to read the words of the policy. It
matters not what any insurance obtained
by Huffman said. Huffman's promise to
insure, in and of itself, triggered that part
of the St. Paul policy that made it second-
ary and contingent.

Huffman bought coverage from Commercial Union. That policy contains a standard other-insurance clause, rendering Commercial Union's coverage excess

[i]f there is any other insurance covering the property insured hereunder which in absence of this insurance would cover the loss or damage hereby covered. . . .

The condition described by this clause never came to pass. There is no such "other insurance"—no insurance, that is, which would cover the loss absent the Commercial Union policy. The St. Paul policy does not cover the loss, but this has nothing to do one way or the other with Commercial Union or its policy. It has to do only with Huffman's promise to obtain insurance. When this promise was made, it rendered St. Paul's coverage secondary *eo instante*. Commercial Union's other-insurance clause might help as against some other insurer, but it avails nothing as against St. Paul, because Huffman's promise, entirely independently of anything in Commercial Union's policy, had already made the St. Paul policy secondary.

Because this interpretation of the two clauses reconciles them, it should be preferred. The judgment in favor of Cargill, imposing the entire loss on Huffman and Commercial Union, should be affirmed.